ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| HOME MADE PR CORP.<br><br>Parte Apelante<br><br><br>v.<br><br><br>JULU CONCEPTS, LLC;<br>LUIS SANTOS ALVAREZ;<br>JUAN PEÑA ROMERO;<br>WILFREDO MARTINEZ<br>CUEVAS<br><br>Partes Apeladas | TA2025AP00659 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: SJ2021CV02534<br><br>Sala: 408<br><br>Sobre:<br><br>Incumplimiento de Contrato; Daños y perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de enero de 2026.

Compareció ante este Tribunal la parte apelante, Home Made PR Corp. (en adelante, "Home" o "Apelante"), mediante recurso de apelación presentado el 10 de diciembre de 2025. Nos solicitó la revocación de la *Sentencia Sumaria Parcial* (en adelante, la "Sentencia") emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, el "TPI"), el 30 de septiembre de 2025 y notificada el 1 de octubre de 2025. A través de dicho dictamen, el TPI declaró "Ha Lugar" las *Solicitudes de Sentencia Sumaria* interpuestas por el Sr. Luis Santos Álvarez (en adelante, el "señor Santos Álvarez"), el Sr. Juan Peña Romero (en adelante, el "señor Peña Romero") y el Sr. Wilfredo Martínez Cuevas (en adelante, el "señor Martínez Cuevas") (en adelante y en conjunto, los "Apelados").

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia Sumaria Parcial* apelada.

### I.

El presente caso tuvo su origen el 27 de abril de 2021, cuando Home presentó una "**Demanda**" contra Julu Concepts LLC. (en adelante, "Julu"),

el señor Santos Álvarez y el señor Peña Romero, por incumplimiento de contrato y daños y perjuicios. Mediante dicho escrito alegó que el 24 de agosto de 2020, por conducto de su presidente, el Sr. Orlando Rodríguez Nemcik (en adelante, el "señor Rodríguez Nemcik"), suscribió un contrato con los señores Santos Álvarez y Peña Romero, en su carácter de presidente y vicepresidente de Julu, respectivamente, mediante el cual se acordó la venta de la referida corporación y de su negocio denominado Aloz Flito, ubicado en la Avenida Ponce de León, en el Municipio de San Juan, por la suma total de treinta y siete mil quinientos dólares ($37,500.00).

Asimismo, sostuvo que los Apelados recibieron dos cheques como parte del pago acordado: (1) uno por la cantidad de quince mil dólares ($15,000.00) entregado el 17 de agosto de 2020, y (2) otro por la suma de quince mil dólares ($15,000.00), fechado a 25 de agosto de 2020, ambos correspondientes al pronto y a la adquisición de todos los activos asociados o relacionados con la corporación Julu y el negocio ubicado en el establecimiento comercial conocido como Aloz Flito.

De igual forma, argumentó que los Apelados, a sabiendas, de mala fe e intencionalmente, incurrieron en dolo *in contrahendo* al ocultar deliberadamente la existencia de un problema de malos olores ocasionados por el desbordamiento de aguas negras que inundaban el restaurante, así como la baja presión del agua pluvial que afectaba el referido negocio comercial. Planteó que, de haber tenido conocimiento de dichas condiciones, no habría procedido con la compra.

Expuso, además, que, para la fecha del 24 de agosto de 2020, cuando se formalizó el contrato de compraventa del negocio, los Apelados ya tenían conocimiento de los problemas antes mencionados y se lo ocultó con el propósito de concretar la venta y obtener una suma considerable de dinero por la transferencia de un negocio, cuyo defecto no era aparente ni le fue informado. Resaltó que la condición de desbordamiento de aguas negras, por su naturaleza, resulta nociva para la utilidad del bien y lo hace impropio para el uso al que está destinado, particularmente tratándose de un restaurante.

Finalmente, alegó que los Apelados incluyeron como parte de la compraventa la totalidad del inventario de equipos del negocio, cuando posteriormente se constató que ciertos bienes, específicamente doce (12) mesas del salón, el *walk-in cooler* y el *walk-in freezer*, no pertenecían a los vendedores, sino al señor Martínez Cuevas, propietario del inmueble donde ubica el negocio Aloz Flito.

En virtud de lo anterior, le solicitó al foro primario que ordenara a los Apelados lo siguiente: (1) la devolución inmediata de la suma de treinta mil dólares ($30,000.00), (2) la concesión de una indemnización por daños económicos ascendentes a treinta mil setenta dólares con setenta y ocho centavos ($30,070.78) y (3) una indemnización adicional por daños morales, sufrimientos y angustias mentales, derivados del engaño, dolo e incumplimiento contractual imputado, por la suma de treinta mil dólares ($30,000.00).

Así las cosas, el 22 de julio de 2021, el señor Peña Romero presentó una "**Contestación a la Demanda y Reconvención**", mediante la cual rechazó la mayoría de las alegaciones expuestas en su contra y alegó que el segundo pago recibido constituyó un abono parcial conforme a los principios y prácticas de contabilidad vigentes. Adujo, además, que el señor Rodríguez Nemcik, previo a la firma del contrato de compraventa del negocio y en su carácter de presidente de la corporación Home, visitó el establecimiento en múltiples ocasiones mientras éste se encontraba en operaciones, tanto de manera personal como acompañado de familiares.

Expuso, asimismo, que el señor Rodríguez Nemcik inspeccionó el negocio en funcionamiento en diversas ocasiones junto a sus peritos y que, durante dicho periodo, sostuvo varias reuniones con el propietario del inmueble, el señor Martínez Cuevas, quien posteriormente le arrendó el local y los bienes muebles de su pertenencia. Añadió que, mientras él operó el negocio bajo la corporación Julu, no se produjeron desbordamientos de aguas negras ni se experimentaron problemas de baja presión de agua pluvial.

En su *Reconvención* sostuvo que las actuaciones torticeras de la Apelante han afectado su estabilidad emocional, generándole un temor fundado de que la acción judicial incoada menoscabe su reputación profesional y laboral, así como sus oportunidades y desempeño dentro de su ámbito de trabajo actual. A la luz de lo anterior, le solicitó al TPI que declarara "No Ha Lugar" la "**Demanda**" y que se le concediera una cuantía ascendente a cincuenta mil dólares ($50,000.00), correspondientes a los daños, sufrimientos y angustias mentales sufridas.

El 29 de julio de 2021, el señor Santos Álvarez presentó su "**Contestación a Demanda**" mediante la cual alegó que la acción incoada en su contra constituye un intento de dejar sin efecto un negocio jurídico válido, motivado por el hecho de que las condiciones del mercado y la situación provocada por la pandemia del Covid 19 impidieron a Home obtener las ganancias que esperaba derivar de la transacción comercial realizada. Asimismo, sostuvo que la Apelante examinó de manera exhaustiva el negocio jurídico objeto de la presente controversia y lo encontró en óptimas condiciones, por lo que no puede ahora alegar que se le ocultó información relevante. De igual forma, planteó que Home se encuentra impedida por sus propios actos para presentar la reclamación de autos. En virtud de lo anterior, solicitó al foro de instancia que declarara "No Ha Lugar" las reclamaciones formuladas en su contra.

Posteriormente, el 17 de enero de 2023, Home presentó una "**Demanda Enmendada**" con el propósito de acumular al pleito al señor Martínez Cuevas, arrendador y propietario del inmueble que constituye el objeto de la presente causa de acción. En resumidas cuentas, arguyó que el señor Martínez Cuevas, como dueño del local comercial en cuestión, tenía conocimiento personal de los serios problemas que afectaban la propiedad inmueble para la operación de un negocio destinado a restaurante.

El 8 de septiembre de 2023, el señor Martínez Cuevas presentó su "**Contestación a la Demanda Enmendada**", a través de la cual manifestó que no formó parte ni tuvo participación alguna en los hechos que allí se

alegan, por lo que adujo carecer de conocimiento sobre los mismos. De igual modo, expresó que el 17 de mayo de 2021 suscribieron un documento mediante el cual Home recibió cierta suma de dinero de su parte. Señaló que dicho documento dispone expresamente que el referido pago constituye el pago final en satisfacción de cualquier reclamación derivada del contrato entre las partes. En atención a lo anterior, le peticionó al Tribunal que declarara "No Ha Lugar" la "**Demanda Enmendada**" presentada en su contra.

Más adelante, el 14 de julio de 2025, el señor Santos Álvarez y el señor Peña Romero presentaron una "**Solicitud de Sentencia Sumaria Parcial**", mediante la cual sostuvieron que no existen controversias de hechos materiales que impidieran la adjudicación sumaria del presente caso. Fundamentaron su petición en que las transacciones que dieron lugar al presente litigio fueron realizadas entre dos (2) corporaciones debidamente autorizadas a hacer negocios en Puerto Rico, por lo que alegaron no incurrir en responsabilidad alguna en su carácter personal respecto a las reclamaciones formuladas en su contra.

Con posterioridad, el 17 de agosto de 2025, el señor Martínez Cuevas presentó una "**Solicitud de Sentencia Sumaria**". En dicho escrito, indicó que Home carece de legitimación activa para incoar un pleito en su contra, toda vez que el "Contrato de Arrendamiento de Inmueble y Bienes Muebles" correspondiente al inmueble objeto del presente litigio fue suscrito exclusivamente entre él y la entidad corporativa Julu. De igual manera, adujo que la Apelante no suscribió en ningún momento contrato, acuerdo o documento alguno con él, por lo que no existe relación jurídica que le confiera legitimación para reclamar en su contra.

El 20 de agosto de 2025, Home presentó su oposición mediante escrito intitulado "**Réplica a Sentencia Sumaria**", en la cual sostuvo que, además de habérsele vendido la corporación Julu, posteriormente se constató que la suma de treinta mil dólares ($30,000.00) recibida por los señores Santos Álvarez y Peña Romero fue depositada en sus cuentas personales y no en las arcas de la corporación. Alegó que resulta

irrazonable y contrario a derecho permitir que dicho proceder engañoso sirva de subterfugio para obligar a la propia corporación Julu, a restituirle el dinero pagado, mientras los señores Santos Álvarez y Peña Romero permanecen impunes y se enriquecen injustamente.

Posteriormente, el 22 de agosto de 2025, los señores Santos Álvarez y Peña Romero presentaron su "**Réplica a Oposición a Sentencia Sumaria**", en la cual esbozaron que la *Oposición* presentada por Home incumplía con los requisitos dispuestos en la Regla 36 de las de Procedimiento Civil de Puerto Rico. 32 LPRA, Ap. V, R. 36. Señalaron, además, que la Apelante acompañó una declaración jurada carente de hechos, sustentada en apreciaciones subjetivas y en prueba de referencia.

El 26 de agosto de 2025, el señor Martínez Cuevas presentó su **"Dúplica a la Réplica a Sentencia Sumaria"**, en la cual explicó que no existe evidencia alguna que acredite que Home haya suscrito contrato de arrendamiento alguno con su persona. Señaló que la Apelante no presentó prueba que sustente tal alegación y reiteró que Home carece de legitimación activa para demandarlo, toda vez que el "Contrato de Arrendamiento de Inmueble y Bienes Muebles" fue suscrito exclusivamente entre él y Julu, sin que Home compareciera ni figurara como parte en dicho acuerdo. A tenor con lo anterior, solicitó que se declarara "Ha Lugar" la "**Solicitud de Sentencia Sumaria**".

El 9 de septiembre de 2025, Home presentó una moción denominada "**Réplica [a] Sentencia Sumaria**", en la cual alegó que fue quien adquirió la llave del negocio Aloz Flito, el inventario y la corporación Julu, convirtiéndose así en propietaria del referido negocio y de todos sus activos. Señaló, además, que el señor Rodríguez Nemcik suscribió el "Contrato de Arrendamiento de Inmueble y Bienes Muebles" en su carácter de presidente de Julu, cuya llave de negocio había sido adquirida por Home. De igual forma, expuso que el 24 de agosto de 2020 se suscribió un "Contrato de Compraventa de Negocio", mediante el cual Julu vendió la llave del negocio a la Apelante.

Más adelante, el 14 de septiembre de 2025, el señor Martínez Cuevas presentó su "**Dúplica a 'Réplica a Sentencia Sumaria' presentada por la parte demandante el 09 de septiembre de 2025**" en la cual argumentó que, luego de examinar la *Réplica* de Home, resultaba forzoso concluir que ninguna de las alegaciones allí vertidas lograba controvertir dos hechos medulares, a saber: (1) que el 28 de agosto de 2020 se suscribió un "Contrato de Arrendamiento de Inmueble y Bienes Muebles" entre el señor Martínez Cuevas y Julu; y (2) que no existe documento, contrato o acuerdo alguno suscrito entre Home y el señor Martínez Cuevas.

Finalmente, el 30 de septiembre de 2025, el foro de instancia emitió una *Sentencia Sumaria Parcial* mediante la cual declaro "Ha Lugar" las mociones dispositivas presentadas por los Apelados y, en consecuencia, desestimó las reclamaciones incoadas por Home en contra de los señores Santos Álvarez, Peña Romero y Martínez Cuevas. Inconforme con dicha determinación, la Apelante presentó una "**Reconsideración a Sentencia Sumaria Parcial**" que fue declarada "No Ha Lugar" mediante *Orden sobre Reconsideración* emitida y notificada el 10 de noviembre de 2025.

Aun insatisfecha con dicho proceder, Home presentó el recurso que nos ocupa y le imputó al foro de instancia la comisión de los siguientes errores:

> **PRIMER ERROR**: Erró el Tribunal de Primera Instancia al declarar Con Lugar las mociones de sentencia sumaria y concluir que no existe controversia genuina sobre hecho material alguno que impida que se disponga de este asunto por la vía sumaria, sin tomar en consideración que los codemandados Luis Santos Álvarez y Juan Peña Romero fueron las personas que recibieron en su carácter personal la suma de $30,000.00 dólares por la venta de la llave del negocio Aloz Flito, el inventario y la corporación Julu Concepts, LLC; abusando de su discreción y actuando de ese modo de forma ilegal, arbitraria y caprichosa; así como con pasión, prejuicio, parcialidad y error manifiesto, privándole de su derecho constitucional a tener su día en Corte y a un debido procedimiento de Ley, lo que constituye un fracaso irremediable de la justicia.

> **SEGUNDO ERROR**: Erró el Tribunal de Primera Instancia al dictar sentencia sumaria con perjuicio al amparo de la Regla 36.2 de Procedimiento Civil al concluir que los codemandados Luis Santos Álvarez y Juan Peña Romero no son responsables de la devolución del dinero que recibieron de manos del demandante para la compra de la llave del

negocio, inventario y corporación Julu Concepts, LLC, a pesar de que el contrato de arrendamiento del local comercial donde ubicaba el restaurante Aloz Flito, estos firmaron en su carácter personal y ese mismo contrato fue el que le vendieron a la parte demandante, abusando de su discreción y actuando de ese modo de forma ilegal, arbitraria y caprichosa; así como con pasión, prejuicio, parcialidad y error manifiesto, privándole de su derecho constitucional a tener su día en Corte y a un debido procedimiento de Ley, lo que constituye un fracaso irremediable de la justicia.

**TERCER ERROR**: Erró el Tribunal de Primera Instancia al dictar sentencia sumaria con perjuicio al amparo de la Regla 36.2 de Procedimiento Civil al determinar que tampoco es responsable el dueño del local el Sr. Wilfredo Martínez Cuevas, por alegadamente no tener legitimación activa y no ser parte del contrato de arrendamiento entre Julu Concepts, LLC, Luis Santos Álvarez y Juan Peña Romero con Home Made PR Corp., sin tomar en consideración que en la demanda se alega específicamente, el que se le ocultó deliberadamente al nuevo adquiriente de la llave del negocio Home Made PR Corp. el problema de inundaciones y desbordamientos de aguas negras dentro del local por ambos codemandados; y sin tomar en consideración que finalmente durante la deposición tomada a la parte codemandada Wilfredo Martínez Cuevas, bajo juramento admitió que el problema de inundaciones y desbordamientos de aguas negras venía ocurriendo desde hace mucho tiempo antes de que Home Made PR Corp. comprara la llave del negocio a los codemandados Luis Santos Álvarez y Juan Peña Romero, admitiendo también que se lo informó a ellos, todo lo cual negaron en todo momento hasta su deposición, abusando de su discreción aplicando de forma arbitraria e irrazonable el Derecho, actuando de este modo con prejuicio, parcialidad y error manifiesto, lo que constituye un fracaso irremediable de la justicia.

**CUARTO ERROR**: Erró el Tribunal de Primera Instancia al dictar sentencia sumaria con perjuicio al amparo de la Regla 36.2 de Procedimiento Civil sin tomar en consideración que el problema de inundaciones y desbordamientos de aguas negras dentro del local vendido su llave al demandante para operar un restaurante fue ocultado por ambos codemandados, que de haberlo conocido no hubiese comprado la llave un negocio de restaurante, y sin tomar en consideración que dicha ocultación fue llevada a cabo no solamente por los codemandados Luis Santos Álvarez y Juan Peña Romero sino que por el dueño del establecimiento el codemandado Wilfredo Martínez Cuevas, quienes se beneficiaron económicamente del engaño de mala fe, intencionalmente y ocultaron una situación inaceptable para poder establecer un restaurante; por lo que sus determinaciones están en conflicto con el balance más racional, justiciero y jurídico de la controversia, incurriendo en craso abuso de discreción y actuando de ese modo de forma ilegal, arbitraria y caprichosa; así como con pasión, prejuicio, parcialidad y error manifiesto, privándole de su derecho constitucional a tener su día en Corte y a un debido procedimiento de Ley, lo que constituye un fracaso irremediable de la justicia.

El 23 de diciembre de 2025, el señor Santos Álvarez presentó su "**Alegato de la Parte Apelada**". Mientras que el 28 de diciembre de 2025, los señores Peña Romero y Martínez Cuevas presentaron un "**Alegato del Codemandado-Apelado**" y un "**Alegato de la parte apelada codemandado Wilfredo Martínez Cuevas**", respectivamente.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## A.

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 216 DPR ____ (2025); 2025 TSPR 96.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver

la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), **el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición**. **Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera**

**colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión**". Íd., pág. 54 (énfasis suplido).

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está

vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**[1]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala et al. v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

## C.[2]

En el contexto del incumplimiento contractual, se entiende que existe dolo cuando se induce a una parte a otorgar un contrato mediante "maquinaciones insidiosas". Pérez Rosa v. Morales Rosado, 172 DPR 216, 229 (2007). Esto es, toda conducta artificiosa o ilícita, cuyo fin es engañar a uno de los involucrados, ello tras afectar la prestación voluntaria e informada de su consentimiento en la formación del contrato. Vélez Torres, *op. cit,* págs. 58-61. Así, el dolo "implica todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a reunirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él". Íd.

También constituye dolo "el callar sobre una circunstancia importante relacionada con el objeto del contrato". García Reyes v. Cruz Auto Corp., 173 DPR 870, 886 (2008). Es decir, que el dolo no necesariamente implica una artimaña, sino que el silencio sobre

---

[2] Íd.

determinados hechos relevantes para viabilizar la contratación, también se cataloga como tal. Bosques v. Echevarría, 162 DPR 830, 836 (2004).

Por otra parte, el dolo no se presume, por lo que tiene que demostrarse, ya sea de forma indirecta o mediante evidencia circunstancial. Además, no todo tipo de dolo produce la nulidad de un contrato. García Reyes v. Cruz Auto Corp., *supra*, pág. 886. Para que se produzca la nulidad del contrato, el dolo debe ser grave y no meramente incidental. Pérez Rosa v. Morales Rosado, *supra*, págs. 229-230. Además, no debe haber sido empleado por ambas partes contratantes. 31 LPRA sec. 3409.

El dolo incidental es el que afecta las obligaciones accesorias del contrato, y únicamente da lugar a una indemnización en daños y perjuicios. Colón v. Promo Motors Imports, Inc., 144 DPR 659, 667 (1997). Ello responde a que no tuvo una influencia decisiva sobre la obligación, dado a que, aunque hubo engaño en el modo en que el contrato fue celebrado, el perjudicado sí tenía la voluntad de contratar. Pérez Rosa v. Morales Rosado, *supra*, pág. 230; García Reyes v. Cruz Auto Corp., *supra*, pág. 887. En otras palabras, que el contrato se hubiera celebrado de todas formas, pero bajo condiciones diferentes. Colón v. Promo Motors Imports, Inc., *supra*, pág. 667.

De otro lado, el dolo es grave o causante cuando el acreedor no hubiese celebrado el contrato de conocer de su existencia. S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 64 (2011). Es decir, cuando el engaño recae en los elementos esenciales del contrato; es decir, que tiene un efecto en las motivaciones principales que llevaron a la parte afectada a vincularse. Colón v. Promo Motors, Inc., *supra*, pág. 669. Cabe destacar que la determinación de si el dolo es grave o incidental es una cuestión de hecho. Por lo tanto, está sujeta a la apreciación de las circunstancias concurrentes en cada caso. Acosta & Rodas, Inc., v. PRAICO, 112 DPR 583, 616 (1982). No obstante, la causa de acción en la contratación por dolo, tanto en su modalidad causante como en la incidental, requieren que

el reclamante presente la prueba de la conducta dolosa. <u>Colón v. Promo Motors Imports, Inc.</u>*, supra*, pág. 668.

Ahora bien, el Tribunal Supremo ha establecido que las circunstancias de cada caso son determinantes en la adjudicación de la existencia de dolo que anula el consentimiento. Entre otros aspectos, se deben considerar los siguientes: (1) la preparación académica del perjudicado; (2) su condición social y económica; (3) y las relaciones y tipo de negocios en que se ocupa. <u>Citibank v. Dependable Ins. Co., Inc.</u>, 121 DPR 503, 519 (1988); <u>Miranda Soto v. Mena Eró</u>, 109 DPR 473, 478 (1980). Así pues, el dolo puede surgir de un simple hecho o del conjunto de éstos y la evolución de las circunstancias y manejos engañosos. <u>Acosta & Rodas, Inc. v. PRAICO</u>, *supra*, pág. 616.

> De la misma manera, puede ser que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión, sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación, puede dar lugar a la variante del dolo causante. <u>Colón v. Promo Motors, Inc.</u>*, supra*, pág. 669.

**D.**

La Ley Núm. 64-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA secs. 3501 *et seq.*, es un titulado especial mediante el cual se regula todo lo relativo a la existencia de las entidades jurídicas. Así pues, "[l]a figura de la corporación nace para facilitar y promover las actividades comerciales". <u>Miramar Marine *et al* v. Citi Walk et al.</u>, 198 DPR 684, 691 (2017). Cónsono con lo anterior, las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley General de Corporaciones, la cual les faculta a "la realización o promoción de cualquier negocio o propósito lícito [...]". 14 LPRA sec. 3501(b). Por tanto, se les reconoce una serie de poderes y facultades con el objetivo de instaurar un mecanismo eficiente que les permita ejecutar y realizar transacciones comerciales y jurídicas. C.E. Díaz Olivo, <u>Corporaciones: Tratado sobre Derecho Corporativo</u>, Colombia, Nomos impresores, 2016, pág. 1.

La existencia de una corporación como ente jurídico es independiente de sus accionistas, directores y oficiales. Peguero y otros v. Hernández Pellot, 139 DPR 487, 502 (1995); D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993). Por esta razón, una de las características principales de la corporación es que cuenta con una personalidad jurídica distinta y separada a la de sus dueños. Multinational Ins. v. Benítez y otros, 193 DPR 67, 76 (2015); Santiago *et al.* v. Rodríguez et al., 181 DPR 204, 214 (2011). Puesto que, de no ser así, "se destruiría el principio de responsabilidad limitada que es consustancial con la ficción corporativa". Fleming v. Toa Alta Develop. Corp., 96 DPR 240, 244 (1968). Por consiguiente, se entiende que "el deudor y único responsable de las deudas de la corporación, lo es la persona jurídica de la corporación y no el propietario o accionista en su carácter personal." Díaz Olivo, *op cit.*, pág. 119.

A tono con ello, el Artículo 19.01(e) de la Ley Núm. 64-2009, *supra*, nos define lo que constituyen las compañías de responsabilidad limitada (CRL) de la siguiente manera: "Significa compañía de responsabilidad limitada creada por una (1) o más personas bajo las leyes de Puerto Rico, incluyendo sin limitaciones a una compañía de Responsabilidad Limitada con Fin Social. [..]". 14 LPRA sec. 3951. En consonancia con lo anterior, la Ley General de Corporaciones dispone la manera en la que se regulan las compañías de responsabilidad limitada, estableciendo que una vez ésta esté debidamente inscrita, posee una personalidad distinta y separada de los miembros que la constituyen. Díaz Olivo, *op cit.*, pág. 569. Tanto es así que el Artículo 19.19 dispone que:

> Excepto que otra cosa se disponga en esta Ley, las deudas, obligaciones y responsabilidades de una CRL, que surjan de contrato, daños o de otra forma, serán deudas, obligaciones y responsabilidades **exclusivas** de la CRL, y **ningún miembro o administrador de la CRL estará obligado personalmente por dichas deudas, obligaciones y responsabilidades de la CRL, por el mero hecho de ser un miembro o actuar como administrador de la CRL**. 14 LPRA sec. 3969 (A) (énfasis suplido).

Es decir, una vez este tipo de entidad jurídica cumple con lo establecido por ley con respecto a su inscripción, obtiene una personalidad

jurídica totalmente aparte a la de sus miembros y estos últimos no tienen responsabilidad personas por las obligaciones de la empresa. Díaz Olivo, *op. cit.*, pág. 60. "En esta entidad la relación entre los miembros y la gerencia está regulada primordialmente por el acuerdo entre ellos y en ausencia de acuerdo, por las disposiciones de la ley". Íd.

### III.

En el presente caso, la Apelante nos solicitó la revocación de la *Sentencia Sumaria Parcial* mediante la cual el TPI declaró "Ha Lugar" las *Solicitudes de Sentencia Sumaria Parcial* presentadas por los Apelados y, en consecuencia, desestimó las reclamaciones presentadas por Home en contra de éstos.

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se discutirán en conjunto. En síntesis, Home sostiene que el TPI erró al: (1) declarar "Con Lugar" las mociones de sentencia sumaria en controversia, sin tomar en consideración que los señores Santos Álvarez y Peña Romero fueron las personas que recibieron, en su carácter personal, la suma de $30,000.00 por la venta de la llave del negocio "Aloz Flito", el inventario y la corporación Julu; (2) concluir que los señores Santos Álvarez y Peña Romero no son responsables de la devolución del dinero que recibieron de manos de Home; (3) determinar que el señor Martínez Cuevas tampoco es responsable y al (4) no tomar en consideración que el problema de inundaciones y desbordamientos de aguas negras dentro del local fue ocultado por los Apelados.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Igualmente, y como parte de dicho ejercicio adjudicativo, debemos determinar si las partes cumplieron con los requisitos dispuestos en la Regla 36 de Procedimiento Civil al presentar sus respectivas mociones. Sobre este particular, advertimos que los Apelados cumplieron

taxativamente con los requisitos que impone la Regla al momento en que presentaron sus respectivas *Solicitudes de Sentencia Sumaria Parcial*. No obstante, ese no fue el caso de Home cuando presentó su oposición y dúplica. Los autos reflejan que la Apelante no refutó los hechos materiales que los Apelados entienden no están en controversia y que son constitutivos de las causas de acción de Home. Tampoco controvirtió la prueba presentada y descansó en meras afirmaciones contenidas en sus alegaciones.

Establecido lo anterior, del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. Home es una corporación doméstica con fines de lucro organizada bajo las leyes de Puerto Rico.

2. Para la fecha en que se suscribieron los Contratos, Julu era una corporación doméstica con fines pecuniarios autorizada a hacer negocios en Puerto Rico.

3. El 24 de agosto de 2020, Home –representada por su presidente el señor Rodríguez Nemcik– y Julu, representada por los señores Santos Álvarez y Peña Romero como presidente y vicepresidente, respectivamente, y únicos accionistas, suscribieron un contrato denominado "Contrato de Compraventa de Negocio" mediante el cual acordaron la venta de la corporación Julu y de su negocio Aloz Frito localizado en la Avenida Ponce de León 1103, San Juan, Puerto Rico, 00907 por la suma total de $37,500.00.

4. Luego de realizada la mencionada venta, el 9 de octubre de 2020, el señor Rodríguez Nemcik firmó una *Resolución Corporativa* como el nuevo presidente de Julu para realizar el cambio de agente residente de la corporación y registrar sus nuevos oficiales.

5. El 22 de octubre de 2020, el Departamento de Estado aprobó el cambio propuesto por el señor Rodríguez Nemcik a nombre de la corporación y enmendó su certificado, de conformidad con la petición de este.

6. Dos meses después, el 20 de diciembre de 2020, el señor Rodríguez Nemcik firmó una nueva *Resolución Corporativa* como presidente de Julu, para nombrar nuevamente a los señores Santos Álvarez y Peña Romero como administradores de dicha entidad.

7. El señor Rodríguez Nemcik efectuó dicho cambio en el Departamento de Estado sin obtener primero la autorización de los señores Santos Álvarez y Juan Peña.

8. El 8 de enero de 2021, el Departamento de Estado registró el cambio solicitado en la *Resolución Corporativa* firmada por el señor Rodríguez Nemcik.

9. El 28 de agosto de 2020, el señor Martínez Cuevas suscribió con Julu un "Contrato de Arrendamiento de Inmueble y Bienes Muebles" para el arrendamiento del inmueble comercial sito en la Avenida Ponce De León número 1103, esquina calle Barcelona, San Juan, Puerto Rico desde donde operaba el negocio "Aloz Flito".

10. La entidad Julu fue cancelada en el Departamento de Estado de Puerto Rico el 30 de diciembre de 2023.

11. No existe ningún documento, contrato o acuerdo suscrito entre Home y el señor Martínez Cuevas.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos. En resumidas cuentas, Home plantea que los señores Santos Álvarez y Peña Romero le ocultaron información esencial sobre problemas de aguas negras e inundaciones dentro del restaurante objeto de la presente controversia, lo cual vició su consentimiento al constituirse dolo en la contratación. Asimismo, expresó que resultaba absurdo que sea la propia Corporación Julu, quien tenga que restituirle los $30,000.00 que depositaron mientras los señores Santos Álvarez y Peña Romero se enriquecieron injustamente, puesto que depositaron dicha cantidad en sus cuentas personales. Además, alega que los Apelados le vendieron mediante treta y engaño un "negocio" utilizando un nombre comercial que no estaba inscrito. Finalmente, sostiene que el TPI erró al disponer sumariamente de la causa de acción acumulada en contra del señor Martínez Cuevas, luego de concluir que Home no tenía legitimación activa para reclamar un incumplimiento de contrato por dolo, pues no fue parte del contrato de arrendamiento suscrito entre Julu y este último.

Conforme adelantáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a

hechos esenciales y pertinentes del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Demanda Enmendada**", las *Mociones de Sentencias Sumarias,* sus correspondientes *Oposiciones*, la *Réplica* y la *Dúplica*, hemos arribado a la conclusión de que el TPI actuó correctamente al disponer del caso por la vía sumaria. Nos explicamos.

De entrada, es menester destacar que en la "**Demanda Enmendada**" de autos, la Apelante les imputó a los señores Santos Álvarez, Peña Romero y Martínez Cuevas haber viciado su consentimiento, mediante maquinaciones insidiosas, al realizarse la compraventa del restaurante Aloz Flito, y el posterior arrendamiento del inmueble en donde operaba dicho negocio, así como haberle ocasionado daños y perjuicios. No obstante lo anterior, del examen minucioso de las alegaciones presentadas por Home y de los documentos que obran en los autos, se desprende con meridiana claridad que las causas de acción invocadas por la Apelante en contra de los señores Santos Álvarez y Peña Romero tienen su origen exclusivo en la relación contractual de compraventa que ésta sostuvo con Julu exclusivamente, sin que medie vínculo jurídico alguno entre Home y los señores Santos Álvarez y Peña Romero. También surge claramente que el contrato de arrendamiento del local desde donde operaba el negocio "Aloz Flito" se celebró entre Julu y el señor Martínez Cuevas.

Nótese, pues, que las reclamaciones incoadas por Home en contra de los Apelados están basadas en un presunto vicio del consentimiento por dolo de dos relaciones contractuales. La primera surge de la compraventa

celebrada entre **Julu y Home** y en la cual los señores Santos Álvarez y Peña Romero únicamente comparecieron como oficiales de dicha corporación; mientras que la segunda nace de un contrato en el que únicamente comparecieron **Julu y el señor Martínez Cuevas**. Por tanto, es más que evidente que el presunto dolo en la contratación en la que se constituyó la compraventa que alega la Apelante que se cometió, a quien único podría serle imputable es a Julu y no a los señores Santos Álvarez y Peña Romero, pues éstos no comparecieron en su carácter personal en el contrato a base de cual se fundamentan las causas de acción incorporadas en la "**Demanda Enmendada**". Recuérdese que las obligaciones y responsabilidades de una compañía de responsabilidad limitada que surjan de un contrato o los daños que se le imputen a ésta "serán deudas, obligaciones y responsabilidades **exclusivas** de la [compañía de responsabilidad limitada], y **ningún miembro o administrador de la [compañía de responsabilidad limitada] estará obligado personalmente por dichas deudas, obligaciones y responsabilidades de la CRL, por el mero hecho de ser un miembro o actuar como administrador de la CRL**". 14 LPRA sec. 3969 (A) (énfasis suplido).

De hecho, aunque Home adquirió a Julu, ambas constituyen entidades separadas con su propia personalidad jurídica, derechos y obligaciones. En consecuencia, cualquier reclamación relacionada con el contrato debe dirigirse exclusivamente contra Julu, aun cuando sus oficiales corporativos coincidan. Dicho de otro modo, es Julu quien debe responder frente a Home, aun cuando sus presidentes sean la misma persona. Relacionado a ello debemos enfatizar en que la Apelante pretende enmendar sus alegaciones para incorporar una causa de acción por enriquecimiento injusto en contra de los señores Santos Álvarez y Peña Romero, puesto que sostiene que los $30,000.00 que se entregaron como prestación en la transacción impugnada fueron depositados en las cuentas personales de ambos. Sin embargo, ello nunca se alegó en la "**Demanda Enmendada**" y se planteó por primera ocasión en la oposición y dúplica presentadas por la Apelante. Esto resulta contrario a la normativa

reconocida por el Tribunal Supremo en nuestra jurisdicción cuando resolvió que "**la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión**". <u>León Torres v. Rivera Lebrón</u>, *supra*, pág. 54 (énfasis suplido).

En suma, aun si le concediéramos valor hipotético a la alegación de Home de que su consentimiento se vio viciado mediante maquinaciones insidiosas, dicho vicio, de existir, únicamente podría imputársele a Julu, y no a terceros ajenos sobre quien no existe alegación alguna que intervino en el proceso de contratación habido entre la Apelante y la referida entidad corporativa, y a quien se le reclama por lo que surge exclusivamente del contrato de compraventa. En nuestro ordenamiento jurídico la doctrina del vicio de la voluntad o del consentimiento presupone la existencia de un vínculo contractual entre las partes afectadas; por lo tanto, su configuración resulta jurídicamente improcedente frente a quien no formó parte del negocio jurídico ni intervino en su celebración. Más aun cuando del legajo apelativo no surge prueba o alegación alguna que demuestre que los señores Santos Álvarez y Peña Romero actuaron fuera del marco de sus funciones corporativas ni que incurrieran en actuaciones personales que justifiquen descorrer el velo corporativo de Julu.

Finalmente, en lo que respecta al contrato de arrendamiento, surge de una somera lectura que quien único tiene autoridad en ley para reclamar el alegado dolo en la contratación lo es Julu y no Home como se intentó. Así surge claramente de las alegaciones incluidas en la "**Demanda Enmendada**" y de los hechos estipulados por las partes en el *Informe Preliminar entre Abogados* presentado por éstas. La Apelante nunca figuró como parte contratante en el acuerdo de arrendamiento que se suscribió entre el señor Martínez Cuevas y Julu. Por tanto, tal y como concluyó el foro de instancia, carecía de legitimación activa para reclamar dolo en dicha

contratación porque simplemente no fue parte del contrato cuyo vicio en el consentimiento reclamó.

En suma, al no mediar entre Home y los Apelados relación contractual alguna, ni alegarse que éstos hubieran intervenido directa o sustancialmente en el perfeccionamiento del contrato de compraventa y del contrato de arrendamiento objetos de estas controversias, ni tampoco evidenciar que éstos contribuyeron al presunto dolo en la contratación, las reclamaciones por vicio del consentimiento y daños y perjuicios resultan jurídicamente improcedentes. Resolver lo contrario implicaría extender indebidamente la responsabilidad contractual a terceros ajenos al vínculo jurídico habido entre Home y Julu y no reconocerle personalidad jurídica independiente de las de sus oficiales a una corporación; todo en clara contravención con nuestro ordenamiento jurídico. Según hemos esbozado en los párrafos precedentes, la evidencia que obra en los autos demuestra que ninguna de las causas de acción incoadas por la Apelante se sostiene.

Por consiguiente, al no existir controversia real sobre hechos materiales y pertinentes que justifiquen la continuación del presente pleito en contra de los Apelados, procede disponer del caso por la vía sumaria y desestimar todas las reclamaciones instadas en contra de éstos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Sentencia Sumaria Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones